DECISION
{¶ 1} Relator, Barbara A. Frabott, has filed an original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying her application for permanent total disability compensation, and to enter an order finding that she is entitled to such compensation.
{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
{¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the record, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, relator's requested writ of mandamus is denied.
Writ of mandamus denied.
PETREE, P.J., and WATSON, J., concur.
 APPENDIX A
{¶ 4} Relator, Barbara A. Frabott, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to issue an order finding that she is entitled to that compensation.
Findings of Fact:
{¶ 5} 1. Over the course of her life, relator has sustained five work-related injuries and her claims have been allowed as follows:
{¶ 6} "* * * Claim Number 95-441693 has been allowed for: Lumbar, sacrum and left hip strain; aggravation of degenerative disc disease of lumbar L3-L4 with spinal instability.
{¶ 7} "* * * Claim Number 78-13289 has been allowed for: Fracture right clavicle and soft tissue injury to right shoulder, strain to neck and upper back.
{¶ 8} "* * * Claim Number 83-40252 has been allowed for: Left hip, strain low back; post traumatic aggravation of lumbar degenerative disc disease with spinal instability.
{¶ 9} "* * * Claim Number 92-76765 has been allowed for: Spain back and left knee.
{¶ 10} "* * * Claim Number 94-315099 has been allowed for: Acute tendonitis of the flexor carpi radalis right wrist; DeQuervain's tendonitis."
{¶ 11} 2. On May 11, 2000, relator filed an application for PTD compensation.
{¶ 12} 3. Relator's application was supported by the April 18, 2000 report of her treating physician, Dr. Kevin B. Lake, who opined that relator was permanently and totally disabled from all gainful employment as a result of her work-related injuries.
{¶ 13} 4. On July 27, 2000, relator was examined by Dr. John W. Cunningham who issued a report dated July 31, 2000. Within the body of his report, Dr. Cunningham noted that relator would have the following restrictions:
{¶ 14} "* * * This individual has no restrictions in sitting. She may stand 0 to 3 hours per work shift and walk 0 to 3 hours per work shift. She may lift, carry, push, pull or otherwise move objects up to 10 pounds on an unrestricted basis. She may lift or carry 10 to 20 pounds 0 to 3 hours per work shift. She may push, pull or otherwise move objects 10 to 20 pounds 3 to 5 hours per work shift. She should not be asked to lift, carry, push, pull or otherwise move objects 20 pounds in weight or greater. She may rarely negotiate stairs. She should not be asked to negotiate ladders. She may occasionally utilize foot controls with both lower extremities. She should not be asked to crouch, stoop, bend or kneel in the course of her employment. With the right upper extremity she may frequently seize, hold, grasp or turn objects held in the right hand. With the right upper extremity she may occasionally reach overhead. She has no restrictions with waist level or knee level reaching. With both upper extremities she may occasionally reach to floor level. Her floor level reaching is related to her low back difficulties. Her overhead reaching with the right upper extremity is related to her right shoulder difficulties. She must be able to use a cane to assist her ambulation on an as needed basis while working."
{¶ 15} Dr. Cunningham also completed an occupational activity assessment. (The staff hearing officer noted that the body of Dr. Cunningham's report was more restrictive than the occupational activity assessment. However, upon careful review of both, this magistrate finds that there is no difference between the restrictions that Dr. Cunningham noted in the body of his report and on the occupational activity assessment.) Dr. Cunningham opined that relator had reached maximum medical improvement ("MMI") regarding all of her allowed conditions, assessed a 39 percent whole person impairment and concluded that relator was employable in sustained remunerative employment within the restrictions he noted. As such, he did note that she was basically employable in sedentary work such as the work of a ward clerk which she had performed previously.
{¶ 16} 5. An employability assessment was prepared by Charles Loomis, MED. Based upon the report of Dr. Lake, Mr. Loomis concluded that relator was not employable. However, based upon the report of Dr. Cunningham, Mr. Loomis noted that relator could return to and perform her past work as a receptionist and telephone solicitor. Mr. Loomis noted that relator was closely approaching advanced age and, as such, her age would be a moderately limiting factor. With regard to her ninth grade level of education, Mr. Loomis noted that relator had engaged in occupations requiring average levels of cognitive ability in the past. In addressing her work history, Mr. Loomis noted that relator had performed work involving considerable interpersonal and clerical abilities in the past and that, based upon her work experience, she would be expected to possess transferable skills that would allow her to perform a wide range of entry level clerical occupations.
{¶ 17} 6. Relator's application was heard before a staff hearing officer ("SHO") on November 7, 2000, and resulted in an order denying her application. The SHO relied upon the medical report of Dr. Cunningham and concluded that relator could perform sedentary work. The SHO also relied on the vocational assessment of Mr. Loomis. The SHO agreed that relator would have transferable skills from her prior employment and that her prior jobs demonstrated her interpersonal skills. The SHO also concluded that relator's long involvement in the medical field would make her more marketable for clerical work in the medical field. The SHO noted that relator's ninth grade education and her ability to read, write and do basic math had enabled her to learn and perform mostly semi-skilled work in the past which, Mr. Loomis indicated required average levels of cognitive ability. The SHO concluded that there was no reason why relator's academic abilities would not allow her to perform, or retrain for, sedentary semi-skilled or unskilled work, especially in the medical field. With regard to her age, the SHO noted that, although she was 63 years old, her age alone was not a sufficient basis upon which to grant PTD compensation. (The commission's order can be found at pages 1 through 3 of the record for the court's review.)
{¶ 18} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
{¶ 20} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant non-medical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
{¶ 21} Relator challenges the commission's order in two respects: (1) the commission abused its discretion in relying upon the report of Dr. Cunningham when that report and occupational activity assessment were internally inconsistent; and (2) even if Dr. Cunningham's report could properly be considered, the commission abused its discretion in considering the nonmedical disability factors and the order fails to satisfy the requirements of Noll. For the reasons that follow, this magistrate disagrees.
{¶ 22} First, relator contends that the commission abused its discretion by relying upon the report of Dr. Cunningham. Relator argues that Dr. Cunningham's written report and his occupational activity assessment are internally inconsistent and that the commission could rely on neither to deny her PTD compensation.
{¶ 23} Relator is correct in asserting that equivocal or inconsistent medical reports do not constitute some evidence upon which the commission could rely. State ex rel. Paragon v. Indus. Comm. (1983),5 Ohio St.3d 72, and State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm. (1994), 70 Ohio St.3d 263. However, in Paragon, Dr. Cullen had opined that the claimant was totally disabled but also stated that he was uncertain. Furthermore, he noted that the claimant would not be able to return to work and yet stated that if the claimant was motivated then he probably could work. The court noted that Dr. Cullen's report was, at best, equivocal and that it did not constitute evidence upon which the commission could rely in either granting or denying the claimant's application. Likewise, in Owens-Corning, Dr. Knight had indicated that the claimant was not able to perform any meaningful employment. However, in a subsequent deposition, Dr. Knight had indicated that he did not know whether or not the claimant was still incapable of performing sustained remunerative employment. Given Dr. Knight's reaffirmation of permanency, the court noted that it could not characterize his testimony as an outright repudiation. However, the court found that his ultimate disability opinion was fatally equivocal and that his report could not constitute some evidence supporting the commission's decision.
{¶ 24} In the present case, the actual restrictions which Dr. Cunningham noted relator had are the same in both his written report as well as on the occupational activity assessment. Relator is correct in stating that, pursuant to the Ohio Administrative Code, the actual restrictions which Dr. Cunningham gave her would actually qualify her for light duty work. However, as the commission noted, within the body of his written report, Dr. Cunningham did state that he believed that relator could perform sedentary work such as the ward clerk work she was performing earlier. This statement does not make his report equivocal. Dr. Cunningham clearly opined that relator is capable of performing some sustained remunerative employment within the restrictions he gave. The fact that the commission took his use of the word "sedentary" as more strictly limiting relator's ability from light duty to sedentary work is not a reason to remove his report from consideration. Ultimately, the commission found that, even considering a restriction to sedentary employment, relator was capable of performing some sustained remunerative employment.
{¶ 25} Within this argument, relator also asserts that the commission failed to give due consideration to the reports of her treating physicians. However, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373. Furthermore, in State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, the Ohio Supreme Court expressly rejected the assertion that the treating physician's report is entitled to enhanced weight. As such, relator's argument is not well-taken.
{¶ 26} Lastly, relator contends that the commission did not properly consider the Stephenson non-medical factors and that the commission's report did not comply with Noll. In making this argument, relator simply points to the non-medical factors and argues that the commission could not have determined that she was employable. For example, relator contends that the only evidence in the record regarding her age came from the report of Mr. Loomis who concluded that her age would be a moderately limiting factor. Inasmuch as the commission relied upon the vocational report of Mr. Loomis, relator contends that the commission was bound to accept his conclusion regarding her age. This magistrate disagrees.
{¶ 27} The Ohio Supreme Court has stated that there is not an age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. Pass; State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461; and State ex rel. Bryant v. Indus. Comm. (1996),74 Ohio St.3d 458. Furthermore, the commission is not bound to accept everything in a vocational report. In fact, to bind the commission to a rehabilitation report's conclusions makes the rehabilitation division, and not the commission, the ultimate evaluator of disability contrary to Stephenson. State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117. In relying upon the vocational report of Mr. Loomis, the commission was not bound to accept all of his conclusions. Instead, the commission noted that her age, standing alone, would not preclude her from reemployment. That conclusion was within the commission's discretion.
{¶ 28} Furthermore, relator contends that the commission abused its discretion in finding that her education was sufficient to permit her to become reemployed. Relator points to the fact that her most recent work was as a nurse's aide which required her to work at a medium strength level. As such, even though there is evidence that her past work experience required average levels of cognitive ability and even though the commission found that her education was an asset to her reemployment and/or retraining, relator contends that, since she cannot go back to medium strength work, her education is not an asset. This magistrate disagrees.
{¶ 29} The commission noted that relator had worked as a ward clerk which involved a lot of writing and that her job as a nurse's aide required that she prepare personal care reports and keep a personal care book. The commission found that those skills would transfer to sedentary clerical work, particularly if such work was available at a hospital, medical care facility, or doctor's office. This finding does not constitute an abuse of discretion.
{¶ 30} Regarding her work history, relator makes a similar argument that she did regarding her education, that being that the clerical type work was performed too long ago and that relator could not perform such jobs today. This magistrate disagrees. The commission found that her interpersonal skills would permit her to answer telephones, talk with people, and that her skills in writing reports would still be viable today. This finding does not constitute an abuse of discretion. As such, this argument of relator is not well-taken.
{¶ 31} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS MAGISTRATE